UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

CHARLES R. MACKENZIE,

                Plaintiff,

     -v-                                  No. 21-CV-5711-LTS

NEW YORK CITY DEPT. OF EDUCATION,
et al.,

                Defendants.

-------------------------------------------------------x

### MEMORANDUM ORDER

        Pro se plaintiff Charles R. Mackenzie ("Plaintiff") brings this action against Defendants the New York City Department of Education ("DOE"); Ketler Louissaint (the Superintendent of New York District 75); and Greer Phillips (the Principal of P.S. 72 Horan School) (collectively, "Defendants") alleging that Defendants violated his civil rights by wrongfully terminating his employment as a public school teacher, in violation of the Age Discrimination in Employment Act ("ADEA"); the New York State Human Rights Law ("NYSHRL"); and the New York City Human Rights Law ("NYCHRL").  (See Docket Entry no. 1 ("Compl.").)  Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Docket entry nos. 30 & 37 (the "Motion").)  The Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1367.  The Court has considered the parties' submissions carefully and, for the following reasons, the Motion is granted in part and denied in part.

BACKGROUND

The following summary of relevant facts is drawn from the Complaint, the well-pleaded factual content of which is taken as true for purposes of this motion practice.[1]  Plaintiff alleges that he experienced age-based discrimination while employed as a special education teacher with the DOE.  Plaintiff began working as a special education teacher with the DOE in 2007, when he was 43 years old.  (Docket entry no. 31-1 ("Petition") ¶¶ 4-8.)  Plaintiff was originally hired pursuant to a probationary employment agreement, which was extended on nine occasions while he worked at various schools in New York City from 2010 through 2019.[2]  In each extension agreement, Plaintiff agreed to serve as a teacher with DOE for an additional year on a probationary basis.  (Docket entry no. 31-4.)

Plaintiff first taught at the New York High School of Art and Design, under Principal Eric Strauss.  During the fall of 2010, Principal Strauss informed Plaintiff that he had decided to extended Plaintiff's probationary period (instead of hiring him for a permanent position) because "you are 46 years old and I can hire two young teachers for the price of you." (Compl. ¶ 4.)  Principal Strauss also told Plaintiff that he should "start looking for a transfer" to

---

[1]     The Court has also considered factual allegations drawn from documents which are attached to or incorporated by reference in the Complaint, and has considered the allegations in Plaintiff's "Amended Addendum" to the Complaint (docket entry no. 21). See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (citations omitted) ("[T]he complaint is deemed to include . . . any statements or documents incorporated in it by reference."); Guy v. MTA New York City Transit, 403 F. Supp. 3d 131, 133 (E.D.N.Y. 2017) (noting that although "an amended complaint ordinarily replaces the original complaint," due to the plaintiff's "pro se status" the court would "consider both the Third Amended Complaint and the First Amended Complaint together") (citations omitted).

[2]     Specifically, Plaintiff received extensions in 2010 and 2011 (while working at the New York High School of Art and Design); in 2012 through 2016 (while working at Long Island City High School); in 2017 through 2018 (while working at the Baccalaureate School for Global Education); and finally an extension in fall 2019 (while working at P79M/Dr. Edmund Horan School).  (Docket entry no. 31-4.)

another school.  (Id.)  In the fall of 2011, Principal Strauss hired two young teachers "in their twenties," Mr. Dejong and Mr. Cucorillo, who had "only a few years of teaching experience." (docket entry no. 21 ("Add. Compl.") ¶ 8.)  The Assistant Principal, James Johnson, also informed Plaintiff that Principal Strauss had directed Johnson to "draft a fraudulent observation of poor performance" about Plaintiff, which was designed to "intimidate [Plaintiff] to transfer to another school."  (Add. Compl. ¶ 9.)

Plaintiff subsequently transferred to another high school, Long Island City High School, where he worked for approximately four years without incident, while consistently receiving high ratings (of either "effective" or "highly effective") on his annual performance reviews.  (Compl. ¶ 10; Petition ¶ 14.)  In the spring of 2016, Principal Vivian Selenikas drafted an observation report about Plaintiff that contained "false representations of poor teacher performance," and told Plaintiff to look for a new teaching position elsewhere.  (Compl. ¶¶ 8-10.)  After Plaintiff left Long Island City High School, Principal Selenikas "hired two young teachers in place" of him. (Compl. ¶ 10.)

Plaintiff then transferred to another high school, the Baccalaureate School for Global Education, where he received "Effective" performance ratings during the 2017-2018 school year, and Principal Kelly Johnson informed Plaintiff that she would "be eventually recommending [him] for tenure."  (Compl. ¶ 14, Petition ¶ 19.)  However, in the fall of 2018, Principal Johnson informed Plaintiff that a school superintendent (Elaine Lindsay) was "considering [him] for a discontinuance," and Principal Johnson then drafted five "unfounded" negative observation reports about Plaintiff.  (Compl. ¶¶ 12-13.)  In June 2018, Principal Johnson "threatened [Plaintiff] with a discontinuance . . . if he did not transfer" to another school.  (Petition ¶ 24.)  After Plaintiff left the Baccalaureate School for Global Education, Principal Johnson hired "three younger teachers" in his place.  (Compl. ¶ 17.)  Additionally,

Plaintiff states that, during the 2018-2019 school year, two younger teachers under 40 (Steven Rabinowitz and Stephanie Tramontozzi) received tenure, while older teachers over 40 (such as Plaintiff and another teacher, Sarah Beane) were denied tenure.  (Compl. ¶ 33; Add. Compl. ¶ 36.)

Plaintiff then transferred to another high school, the P79/Dr. Edmund Horan School, where he began working in the fall of 2019.  (Compl. ¶ 18.)  On the first day of school, Principal Greer Phillips informed Plaintiff that his file had been "flagged" by Human Resources because he had served as a teacher for many years but did not yet have tenure status—and Plaintiff responded by informing Principal Phillips that he believed he was "being subject[ed] to age discrimination."  (Add. Compl. ¶¶ 21, 35.)  During the fall 2019 semester, Plaintiff received "nothing but positive and constructive feedback" from Principal Phillips and Assistant Principal Michelle Lefaivre, but this began to change during the spring semester of 2020.  (Add. Compl. ¶ 22.)

On February 3, 2020, Plaintiff received a "discourteous and disparaging email full of criticisms" from AP Lefaivre (who is younger than Plaintiff), and also received two observation reports containing ratings of "ineffective" in every category.  (Add. Compl. ¶¶ 23-31.)  AP Lefaivre did not provide Plaintiff with feedback or any specific next steps he could take to improve his performance.  (Add. Compl. ¶ 27.)  On February 6, 2020, Plaintiff filed two Annual Professional Performance Review ("APPR") complaints about AP Lefaivre regarding these unfair observation reports and lack of feedback, and also filed ten "related grievances" with the Teachers' Union. (Compl. ¶ 25.)  After observing Plaintiff teach again, on February 12, 2020, AP Lefaivre served Plaintiff with two disciplinary notices accusing him of failing to supervise students and failing to show evidence of lesson planning.  (Compl. ¶¶ 26-29.)  That same day, Plaintiff was summoned to a meeting with Principal Phillips and AP Lefaivre and was "scolded"

for "posting student work that had not been graded the same day as the student performed the work."  (Id.)  They ordered Plaintiff to observe the classrooms of "three younger teachers" in their twenties (Ms. Sachs, Mr. Ochoa, and Mr. Reyes) who were all "in their first or second year of teaching."  (Compl. ¶¶ 28-29, Add. Compl. ¶ 32.)  These three younger teachers consistently "received high ratings from school administrators" while Plaintiff received low ones, despite his "many more years of teaching experience."  (Add. Compl. ¶ 32.)  Plaintiff states that, in general, "age discrimination was commonplace" at the Horan school—that older teachers (such as Plaintiff, Minna Cohen, Sheila Rothmann, and Jacqueline Shore) "routinely received observation reports falsely stating they were performing poorly," while younger teachers under 40 (such as Mr. Ochoa and Mr. Gillis) received higher ratings; were given "cushy jobs such as teaching library skills and health class[;]" and were allowed to teach fewer class periods per day.  (Add. Compl. ¶ 37.)  Plaintiff subsequently received two further informal observation reports from Principal Phillips, which rated him "ineffective" in every category.  (Compl. ¶ 30.)

On September 9, 2020, Plaintiff cross-filed complaints with both the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("SDHR"), alleging that his employer had unlawfully discriminated against him because of his age.  (Compl. ¶ 34, docket entry no. 1 at 14-19.)  On October 26, 2020, Plaintiff received a "denial of completion of probation letter," informing Plaintiff that his employment would be terminated as of November 4, 2020.  (Compl. ¶ 35.)  He was instructed to leave the school building on October 28, 2020, and his employment was terminated as of November 4, 2020. (Id.)  On December 10, 2020, Plaintiff filed a Notice of Claim informing the DOE of his intention to sue for age discrimination and retaliation, among other claims.  (Docket entry no. 17-1, at 41-46.)  In January 2021, Plaintiff commenced a proceeding against Defendants in the New York State Supreme Court, New York County, pursuant to CPLR Article 78, asserting claims of

denial of due process, wrongful termination, and violation of New York Education Law section 2573(1)(a).  (Docket entry no. 31-1, at 1-10.)  In July 2021, the parties entered into a settlement agreement regarding Plaintiff's Article 78 proceeding, in which Plaintiff agreed to discontinue his action against Defendants in exchange for a payment of $15,593.00.  (Docket entry nos. 31-2 & 31-3.)  Specifically, Plaintiff agreed that:

> [Plaintiff] hereby **agrees to the discontinuance with prejudice of all claims he has asserted in this proceeding** . . . and to release Richard Carranza, DOE and the City of New York, their successors or assigns, and all present and former officials, employees, representatives, and agents of the City of New York and DOE ("Released Parties") **from any and all claims**, liabilities, and/or causes of proceeding which [Plaintiff] has or may have against the Released Parties based on any act, omission, event or occurrence occurring from the beginning of the world up through and including the date hereof, **including, without limitation, any and all claims which were or could have been alleged by [Plaintiff] in this proceeding arising out of the events alleged in the Petition,** including all claims for attorneys' fees and costs, and hereby withdraws with prejudice the complaint pending before the New York State Public Employee Relations Board, No. U-37421, **except that *this Agreement shall not waive [Plaintiff's] right to bringing an age discrimination claim challenging his discontinuance.***

Docket entry no 31-3 (the "Settlement") ¶ 1 (emphasis added).

Plaintiff commenced the instant action on July 1, 2021, asserting discrimination, hostile work environment and retaliation claims under the ADEA, the NYSHRL, and the NYCHRL.  Plaintiff filed an "Addendum" to his Complaint in November 2021 (docket entry no. 21) and, in December 2021, Defendants moved to dismiss the Complaint.  (Docket entry no. 30.) Plaintiff filed papers in opposition (docket entry no. 42 ("Pl. Opp.")), and Defendants filed a reply.  (Docket entry no. 43 ("Def. Reply").)

<u>DISCUSSION</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation omitted).  This requirement is satisfied when the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u> (citation omitted).  "In deciding a Rule 12(b)(6) motion, a court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff."  <u>Sara Designs, Inc. v. A Classic Time Watch Co. Inc.</u>, 234 F. Supp. 3d 548, 554 (S.D.N.Y. 2017).  "In the case of a <u>pro se</u> litigant, the court reads the pleadings leniently and construes them to raise 'the strongest arguments that they suggest."  <u>Arias-Mieses v. CSX Transp., Inc.</u>, 630 F. Supp. 2d 328, 331 (S.D.N.Y. 2009) (citation omitted).

<u>Procedural Arguments</u>

Defendants first argue that Plaintiff's discrimination claims are barred for a number of procedural reasons, including: (1) the lack of individual liability under the ADEA; (2) the statute of limitations under the ADEA; (3) Plaintiff's late-filed notice of claim; and (4) the release provision included in the parties' Settlement Agreement.  The Court addresses each argument in turn.

<u>ADEA Individual Liability & Equal Protection</u>

Plaintiff brings ADEA claims against two private individuals who allegedly discriminated against him based on his age: Ketler Louissaint (the Superintendent of District 75), and Greer Phillips (the Principal of the Horan School).  These claims must fail "as a matter of law as the ADEA does not provide for individual liability."  <u>Peres v. Oceanside Union Free Sch. Dist.</u>, 426 F. Supp. 2d 15, 22 (E.D.N.Y. 2006); <u>see also</u> <u>Garibaldi v. Anixter, Inc.</u>, 407 F.Supp.2d

449, 451 (W.D.N.Y. 2006) ("[T]here is no individual liability under *any* of the federal anti-discrimination statutes, including Title VII, the ADA, and the ADEA.").

In his response to the individual liability argument, Plaintiff appears to contend that his claims against Louissaint and Phillips should not be dismissed because he has another viable federal discrimination claim against them based on the same facts—namely, a claim for constitutional equal protection violations by government workers under 42 U.S.C. section 1983.[3] (Pl. Opp. at 7.)  Defendants respond that any such claim is improper because it was not raised in the pleadings, and further assert that Plaintiff should not be permitted to amend his Complaint to add such a claim because it would be futile.

The Court liberally construes Plaintiff's equal protection argument as a request for leave to amend to add a section 1983 equal protection age discrimination claim.  See Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) ("A pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (citation omitted).  Leave to amend should, however, be denied as futile when "it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief"—i.e., when the new proposed claim would clearly not "withstand a Rule 12(b)(6) motion to dismiss."  Goldberg v. Cablevision Sys. Corp., 193 F. Supp. 2d 588, 598 (E.D.N.Y. 2002) (citations omitted).  Defendants here argue that allowing Plaintiff to add a section 1983 equal protection claim would be futile, given that age is not a suspect class under the equal protection clause.

---

[3]     The Court notes that "state and local officials can be held individually liable under 42 U.S.C. § 1983 for violating the Equal Protection Clause of the Fourteenth Amendment by discriminatory acts against those who work under them."  Raspardo v. Carlone, 770 F.3d 97, 113-14 (2d Cir. 2014).

On this issue, courts in this circuit are split—not only as to what legal standard to apply to an age-based equal protection claim brought under section 1983, but also as to whether such a claim is viable at all based on federal preemption principles.  Some courts have held that it is questionable whether or not a plaintiff may even bring a section 1983 equal protection age discrimination claim at all, given that the ADEA supplies a comprehensive federal statutory scheme to remedy this type of injury.  See, e.g., Piccone v. Town of Webster, 511 Fed.Appx. 63, 64 n.1 (2d Cir. 2013) (summary order) ("It is an open question in our circuit whether the ADEA preempts age discrimination claims under Section 1983."); Shein v. New York City Dep't of Educ., No. 15-CV-4236-DLC, 2016 WL 676458, at *6 (S.D.N.Y. Feb. 18, 2016) ("Indeed, it is an open question whether a § 1983 cause of action is available at all for age discrimination claims. The vast majority of circuits that have considered this question have found that the ADEA's remedial scheme evinces a Congressional intent to displace § 1983 as a cause of action for age discrimination."); Kunik v. New York City Dep't of Educ., No. 15-CV-9512-VSB, 2017 WL 4358764, at *10 (S.D.N.Y. Sept. 29, 2017) ("[I]t is an open question in this Circuit whether age discrimination is an appropriate basis for a § 1983 cause of action[.]").

Other courts have held that age-based section 1983 claims are viable, and should be analyzed under the standard McDonnell Douglas burden-shifting framework—essentially treating such claims the same as an ADEA claim.  See, e.g., Wu v. Metro-N. Commuter R.R., No. 14-CV-7015-LTS-FM, 2015 WL 5567043, at *9 (S.D.N.Y. Sept. 22, 2015) ("[C]ourts within the Second Circuit have consistently held that the ADEA does not preclude age discrimination actions brought pursuant to Section 1983, so long as such claims are brought to vindicate distinct violations of constitutional rights."); Wong v. Blind Brook-Rye Union Free Sch. Dist., No. 20-CV-2718-CS, 2022 WL 17586324, at *15 (S.D.N.Y. Dec. 12, 2022) ("A § 1983 equal protection claim of age-based employment discrimination is analyzed under the

McDonnell-Douglas framework."); Weinstein v. Garden City Union Free Sch. Dist., No. 11-CV-2509-AKT, 2013 WL 5507153, at *21 (E.D.N.Y. Sept. 30, 2013) (explaining that a "section 1983 claim may be predicated on age" and that "[c]laims brought under section 1983 are assessed under the framework articulated by the Supreme Court in McDonnell Douglas[.]"); Worrell v. New York City Dep't of Educ., 140 F. Supp. 3d 231, 237 (E.D.N.Y. 2015) (analyzing the plaintiff's section 1983 age-based equal protection claim under the McDonnell Douglas framework); Pejovic v. State Univ. of New York at Albany, No. 17-CV-1092-TJM-DTS, 2018 WL 3614169, at *5 (N.D.N.Y. July 26, 2018) ("The court analyzes an age-discrimination claim brought as a Section 1983 equal protection claim using the familiar McDonnell Douglas framework.") (citation and quotation marks omitted).

Other courts have held that, because age has not traditionally been recognized as a protected class under the equal protection clause, age-based section 1983 equal protection claims are subjected to different standards than ADEA claims.  See, e.g., Chizman v. Scarnati, 218 F. Supp. 3d 175, 181 (E.D.N.Y. 2016) (explaining that, because "[a]ge is not a protected class under the Fourteenth Amendment's Equal Protection Clause," the plaintiff's claim "must be based on a selective enforcement theory" to be viable) (citations omitted); Leon v. Rockland Psychiatric Ctr., 232 F. Supp. 3d 420, 432 (S.D.N.Y. 2017) (same); Fierro v. City of New York, No. 1:20-CV-09966-GHW, 2022 WL 428264, at *8 (S.D.N.Y. Feb. 10, 2022) (noting that a plaintiff who alleges "Fourteenth Amendment discrimination on the basis of age . . . would be afforded the lowest levels of protection available under the Equal Protection Clause") (emphasis omitted); Harry v. McDonald, No. 3:21-CV-01355-SALM, 2022 WL 3576676, at *5 (D. Conn. Aug. 19, 2022) (explaining that, while a plaintiff "may bring an equal protection [section 1983] claim based on age," an age-based classification by a state actor will be subjected to the "rational basis test") (citations omitted).

The Court declines to address these intricacies at this stage of the litigation. Given the significant number of courts that have concluded that age-based section 1983 equal protection claims are viable; and given the Court's conclusion, explained below, that Plaintiff has plausibly pleaded an ADEA discrimination claim (see infra at 19-22); the Court has determined that permitting Plaintiff to amend his Complaint to add an equal protection claim would not clearly be futile.

Accordingly, Plaintiff's ADEA claims against the individual defendants are dismissed, and Plaintiff is granted permission to amend his Complaint to add an equal protection claim against the Defendants.

Timeliness of ADEA Claims

Defendants assert that Plaintiff's remaining claims under the ADEA, and his claims under the NYSHRL and the NYCHRL, are largely time-barred.  With regard to Plaintiff's ADEA claims, Defendants contend that, because Plaintiff filed his SDHR complaint on September 9, 2020, any alleged discriminatory acts that occurred prior to November 14, 2019, are outside the scope of the ADEA's 300-day limitations period.  Plaintiff asserts, however, that the Court should consider all of the discriminatory acts alleged in his pleadings (even those occurring outside of the 300-day limitations period) under an exception known as the "continuing violation" doctrine.

"Before a plaintiff may assert claims under . . . the ADEA in federal court, she must present the claims forming the basis of such a suit in a complaint to the EEOC."  Zoulas v. N.Y.C. Dep't of Educ., 400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019).  "Under the ADEA a victim of age discrimination in New York must file his charge with the EEOC within 300 days after the discriminatory action[.]"  Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 23 (2d Cir. 1985) (citing 29 U.S.C. § 626(d)(2)).  "This statutory filing period is analogous to a statute of limitations, and,

as such, a failure to timely file a charge acts as a bar to a plaintiff's action." Sandvik v. Sears Holding/Sears Home Improvement Prod., Inc., No. 12-CV-2096-JFB-GRB, 2014 WL 24225, at *6 (E.D.N.Y. Jan. 2, 2014) (citations, quotation marks, and alteration omitted).  However, the continuing violation doctrine can act as an exception to this time limit.  This doctrine provides that "when a plaintiff experiences a continuous practice and policy" of discrimination, then "the commencement of the statute of limitations period may be delayed until the last violation." Flores v. United States, 885 F.3d 119, 122 (2d Cir. 2018) (citation and alteration omitted).

        In general, the continuing violation doctrine "is heavily disfavored in the Second Circuit," Collins v. City of New York, 156 F. Supp. 3d 448, 458 (S.D.N.Y. 2016), and "courts have been loath to apply it absent a showing of compelling circumstances."  Trinidad v. New York City Dept. of Correction, 423 F.Supp.2d 151, 165 n.11 (S.D.N.Y. 2006) (citation and quotation marks omitted).  Whether the doctrine applies in a given case will depend upon the types of discriminatory acts alleged by the plaintiff.  When a plaintiff alleges acts of discrimination that were discrete, isolated, and completed—such as "termination, failure to promote, denial of transfer, or refusal to hire," Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002)—the doctrine will not apply because "[e]ach incident of discrimination . . . constitutes a separate actionable unlawful employment practice" that starts the clock on the limitations period.  Id.; see also Sirisena v. City Univ. of New York, No. 17-CV-7135-DLI-RML, 2019 WL 1493220, at *5 (E.D.N.Y. Mar. 31, 2019) ("[D]enial of preferred job assignments is a prototypical example of a discrete act that is not subject to the continuing violation doctrine.").  When, by contrast, a plaintiff alleges acts of discrimination that were similar and continuous in nature—such as a hostile work environment—the doctrine will apply, because claims such as this "are different in kind from discrete acts" in that "[t]heir very nature involves repeated conduct."  Morgan, 536 U.S. at 115.

For example, in <u>Siclari v. New York City Dep't of Educ.</u>, No. 19-CV-7611-AJN, 2020 WL 7028870, at *1-4 (S.D.N.Y. Nov. 30, 2020), the <u>pro se</u> plaintiff alleged that she had experienced age discrimination while employed as a teacher at various schools in New York, and argued that the continuing violation doctrine should be applied to allow the court to consider otherwise time-barred discrimination allegations in her complaint.  The court determined that the plaintiff's allegations did "not merit application of the continuing violation doctrine . . . even read with the 'special solicitude' afforded to <u>pro se</u> litigants."  <u>Id.</u> at *5 (citation omitted).  The court reached this conclusion because "many of the allegations involve different schools, in different environments, and with different persons responsible," and because "many of Plaintiff's allegations relate to disparate disciplining, negative performance reviews, and denial of a preferred job position—the kinds of claims that other courts have best understood as examples of discrete acts."  <u>Id.</u>; <u>see also</u> <u>Donlon v. Bd. of Educ. of Greece Cent. Sch. Dist.</u>, No. 06-CV-6027, 2007 WL 108470, at *4 (W.D.N.Y. Jan. 12, 2007) (holding that the continuing violation doctrine was inapplicable where the plaintiff "asserts that she was subject to a number of separate evaluations and classroom observations during a four-year period made by distinct individuals, each of whom is alleged to have discriminated against her," since these were "separate events that are discrete in nature").

Here, Plaintiff's Complaint alleges a disparate set of discrete actions, occurring over the course of his employment at four different schools, committed by at least seven different people.  The discriminatory acts he describes have all traditionally been understood to be discrete acts—such as negative performance evaluations, failure to promote, denial of preferred

assignments, and termination of employment.[4]  Accordingly, the Court concludes that the

allegations in the Complaint do not support application of the continuing violation doctrine.

Where, as here, the Complaint does not plead facts supporting a continuing violation theory and

no such theory has been clearly articulated in the pleadings (or in any prior pleadings),[5] the

continuing violation doctrine cannot be utilized by a plaintiff to shield against a defendant's

motion to dismiss a claim as untimely.

The ADEA's 300-day statutory filing period must be applied to Plaintiff's claims.

Plaintiff therefore cannot seek relief for any of the alleged discriminatory acts that occurred prior

to November 14, 2019.[6]

Timeliness of NYSHRL and NYCHRL Claims

Defendants contend that Plaintiff's NYSHRL and NYCHRL claims are largely

time-barred because Plaintiff failed to comply with New York state notice of claim requirements.

Under New York law, a plaintiff pursuing a civil claim against the DOE or any officer of the

DOE must file a notice of claim within three months of the accrual of the claim and plead such

timely filing in the complaint.  See N.Y. Educ. Law § 3813(1) ("No action or special proceeding

---

[4]     Plaintiff's hostile work environment claim, which would be appropriate for analysis
under the continuing violation doctrine, is barred by the settlement agreement into which
Plaintiff entered in 2021, as explained below at pages 16-19.

[5]     Plaintiff failed to raise a continuing violation theory in his EEOC or SHDR complaint
(Compl. at 14-19), his petition in the Article 78 proceeding (docket entry no. 17-1), or in
his pleadings in the instant suit.  See Fitzgerald v. Henderson, 251 F.3d 345, 360 (2d Cir.
2001) ("However, a plaintiff may not rely on a continuing violation theory of timeliness
unless she has asserted that theory in the [underlying] administrative proceedings.");
Sundaram v. Brookhaven Nat. Labs., 424 F. Supp. 2d 545, 560 (E.D.N.Y. 2006) ("To
take advantage of the continuing violation exception, however, a plaintiff must clearly
assert that theory of timeliness both in his EEOC charge and in his complaint.").

[6]     Nevertheless, "expiration of the limitations period does not bar an employee from using
the prior acts as background evidence in support of a timely claim."  Davis-Garett v. Urb.
Outfitters, Inc., 921 F.3d 30, 42 (2d Cir. 2019) (citation and quotation marks omitted).

. . . involving the rights or interests of any school district or any such school shall be prosecuted or maintained against any school district, [or] board of education . . . [unless] a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim."); see also Collins v. City of New York, 156 F. Supp. 3d 448, 460 (S.D.N.Y. 2016) ("New York Education Law § 3813 requires a plaintiff to file a notice of claim prior to initiating a lawsuit against a school, school district, board of education, or education officer.").

        Here, Plaintiff filed his Notice of Claim on December 10, 2020—Defendants, accordingly, argue that any state and local law discrimination claims against the DOE and defendant Superintendent Louissaint arising from events that occurred prior to September 11, 2020 (i.e., three months before Plaintiff filed his Notice of Claim) are untimely and cannot be considered.  See, e.g., Williams v. New York City Dep't of Educ., No. 19-CV-1353-CM, 2019 WL 4393546, at *19 (S.D.N.Y. Aug. 28, 2019) (holding that, under section 3813(1), any "portions of [plaintiff's] NYSHRL and NYCHRL claim that rely upon . . . adverse employment events that occurred prior to . . . 90 days before [the filings of the Notice of Claim] are untimely.").  Plaintiff argues, however, that the Court may consider events that occurred on or after June 9, 2020 (i.e., three months before he filed his September 9, 2020, SDHR complaint), because Defendants were put on notice of his claims by his September 9, 2020 filings with the SDHR and the EEOC.  See, e.g., Bagarozzi v. New York City Dep't of Educ., No. 18-CV-4893-RA, 2019 WL 1454316, at *4 (S.D.N.Y. Mar. 31, 2019) (noting that "some courts have held that filing an EEOC or SDHR complaint may satisfy the notice of claim requirement" contained in section 3813).

        The Complaint does not, however, identify any specific allegedly discriminatory acts that took place between June 9, 2020, and September 11, 2020.  Accordingly, the Court will

not address Plaintiff's alternative notice argument because it would not make any difference in the scope of Plaintiff's actionable claims.[7]

Waiver - Settlement Agreement

Defendants next argue that all but one of Plaintiff's discrimination claims are barred due to a waiver and release provision contained in the Settlement Agreement that Plaintiff signed in July 2021, terminating his Article 78 proceeding.[8]  The Agreement reads, in relevant part, that Plaintiff "agrees to the discontinuance with prejudice of all claims he has asserted in this proceeding . . . and to release [the then-Superintendent of Schools], DOE and the City of New York, . . . and all present and former officials, employees, representatives and agents of the City of New York and DOE . . . from and against all claims, liabilities and/or causes of proceeding . . . which were or could have been alleged by [Plaintiff] in this proceeding arising out of the events alleged in the Petition . . . except that this Agreement shall not waive [Plaintiff's] right to bringing *an age discrimination claim challenging his discontinuance*."

---

[7]     For this same reason, the Court does not address Defendants' argument that any NYSHRL and NYCHRL causes of action arising before July 1, 2020, against the DOE and Superintendent Louissant are barred by the Education Law's one-year statute of limitations; and the additional argument that a three-year statute of limitation bars older claims under those laws.  (See docket entry no. 37, at 11 (citing N.Y. Educ. Law § 3813(1) and § 3813(2-b), which provide for a one-year statute of limitations on actions brought against the DOE)); (see also docket entry no. 37, at 9 (citing N.Y.C. Admin. Code § 8-502(d) and N.Y. CPLR § 214, which provide for a three-year statute of limitations on actions brought under the NYCHRL and NYSHRL, respectively)).

[8]     The Court notes that Plaintiff does not contest the validity or authenticity of the Settlement Agreement.  See, e.g., Syville v. City of New York, No. 20-CV-4633-PGG-JLC, 2022 WL 1549795, at *7 (S.D.N.Y. May 17, 2022), report and recommendation adopted, No. 20-CIV-4633-PGG-JLC, 2022 WL 16541162 (S.D.N.Y. Oct. 28, 2022) (concluding that a release signed by a pro se plaintiff was valid because "[d]espite the opportunity to do so in his opposition, [plaintiff] does not assert that he entered into the General Release under any fraud or mistake, nor does he challenge the authenticity or validity of the release").

(Settlement ¶ 1) (emphasis added).  The parties dispute the scope of this waiver, offering competing interpretations of the phrase "an age discrimination claim challenging his discontinuance."

        In interpreting a settlement agreement, it is "well established that settlement agreements are contracts are must therefore be construed according to general principles of contract law." Collins v. Harrison-Bode, 303 F.3d 429, 433 (2d Cir. 2002) (citation and quotation marks omitted).  Similarly, a release "is a species of contract and is governed by principles of contract law." Golden Pacific Bancorp v. Federal Deposit Insurance Corp., 273 F.3d 509, 514 (2d Cir. 2001).  "Where the language of a release is clear, effect must be given to the intent of the parties as indicated by the language employed," in the context of the contract as a whole.  Mateo v. Carinha, 799 F. App'x 51, 53 (2d Cir. 2020) (citation and alteration omitted). The first question a court must address is whether the release language is clear or ambiguous.  A contractual term is unambiguous when "it has a definite and precise meaning and where there is no reasonable basis for a difference of opinion," Prince of Peace Enterprises, Inc. v. Top Quality Food Mkt., LLC, 760 F. Supp. 2d 384, 397 (S.D.N.Y. 2011) (citation omitted), whereas a term is ambiguous when "it is reasonably susceptible to more than one meaning." Maniolos v. United States, 741 F. Supp. 2d 555, 567 (S.D.N.Y. 2010), aff'd, 469 F. App'x 56 (2d Cir. 2012).  "The question of whether the language of a contract is clear or ambiguous is a question of law to be decided by the court," Collins, 303 F.3d at 433 (citation omitted), and "[l]anguage whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation."  JA Apparel Corp. v. Abboud, 568 F.3d 390, 396 (2d Cir. 2009) (citation omitted).

        Based on these principles, the Court must determine whether the phrase "an age discrimination claim challenging his discontinuance," as used in the Settlement Agreement

(which does not provide a definition of any of these terms), is ambiguous.  Plaintiff argues that this exception to the waiver should be construed broadly, to encompass any potential age discrimination claims arising out of the workplace discrimination he experienced—such that the Settlement would not bar Plaintiff from bringing related discrimination claims such as hostile work environment or retaliation.  Defendants, however, argue that this exception to the waiver should be construed narrowly, to encompass only a discrete age discrimination claim challenging the termination of his employment—such that the Settlement would bar Plaintiff from bringing any corollary claims like hostile work environment or retaliation.

The Court concludes, for the following reasons, that the phrase "an age discrimination claim challenging his discontinuance" is unambiguous and covers only a wrongful termination age discrimination claim, and does not cover other types of associated claims such as retaliation or hostile work environment.  First, it is notable that the Settlement employs singular language as opposed to plural (describing a "discrimination claim" as opposed to "discrimination claims"), indicating an intent to limit this exception to a singular claim. Second, claims for retaliation and hostile work environment are distinct from traditional discrimination claims in that they address separate wrongs, which are addressed under differing legal standards.  A retaliation claim aims to remedy unfair reprisal by an employer in response to an employee's protected activity; and a hostile work environment claim aims to remedy severe and pervasive workplace harassment experienced by an employee.  See, e.g., Alfano v. Costello, 294 F.3d 365, 375-76 (2d Cir. 2002) (explaining that a disparate treatment discrimination claim and a hostile work environment claim are considered "two separate theories of recovery," which "differ in pleading and in proof").  The language of the Settlement indicates that the scope of the exception to the release is narrow, and that the only claim that Plaintiff is still permitted to bring against Defendants following the Settlement is a discrete "age discrimination claim challenging

his discontinuance"— the Settlement agreement preserves only a claim of age-based discriminatory discontinuation of his probationary employment agreement (i.e., termination of his employment).  Plaintiff has released his right to sue Defendants for any claims arising under separate legal theories such as hostile work environment and retaliation.[9]

Merits of Age Discrimination Claims

The Court next addresses the merits of Plaintiff's remaining timely age discrimination claims under the ADEA, NYSHRL, and NYCHRL, for discriminatory termination of his probationary status and employment in October and November of 2020.

To establish a prima facie case of age discrimination under the ADEA or NYSHRL, a plaintiff must show "(1) that she was within the protected age group [over 40 years old], (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination."  Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 129 (2d Cir. 2012);[10] see also Rozenfeld v. Dep't of Design & Const. of City of New York, 875 F. Supp. 2d

---

[9]     The Court notes that Defendants raised two additional procedural issues in their papers— an argument regarding a waiver provision in Plaintiff's 2019 probationary extension contract (Motion at 15-16); and a res judicata argument regarding the preclusive effect of the underlying Article 78 proceedings (Motion at 11-14).  Neither of these arguments needs to be addressed here because neither would, if sustained, bar any further components of Plaintiffs' surviving claim.  The waiver in the 2019 extension contract is irrelevant to Plaintiff's claim based on the November 2020 discontinuance of his employment.  The res judicata argument is likewise ineffective to cut off the claim regarding the November 2020 discontinuance, which was explicitly carved out of the resolution of the Article 78 proceeding.

[10]    While "an employment discrimination plaintiff need not plead a prima facie case of discrimination" at the motion to dismiss stage, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002), the elements of a prima facie case may nevertheless "be used as a prism to shed light upon the plausibility of the claim."  Littlejohn v. City of New York, 795 F.3d 297, 307 (2d Cir. 2015) (citation omitted).

189, 206 (E.D.N.Y. 2012), aff'd, 522 F. App'x 46 (2d Cir. 2013) " ("[A]ge discrimination claims under the ADEA and the NYSHRL are analyzed under the same standard.") (quotation marks and alteration omitted).  An inference of discriminatory intent "can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in . . . degrading terms [regarding the protected group of which she is a member]; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" Littlejohn v. City of New York, 795 F.3d 297, 312 (2d Cir. 2015) (citation omitted).  To state a claim for age discrimination under the "far more liberal" standard of the NYCHRL, "a plaintiff need only show differential treatment of any degree based on a discriminatory motive," and must "plausibly allege that he or she was subjected to unequal treatment because of a protected characteristic."  Lebowitz v. New York City Dep't of Educ., 407 F. Supp. 3d 158, 173-74 (E.D.N.Y. 2017).

Here, Plaintiff has alleged sufficient facts to satisfy the first three elements of a prima facie case of age discrimination—it is undisputed that Plaintiff was over 40 years old while employed by Defendants; his long experience as a special education teacher with the DOE indicates that he was qualified for his position (and Defendants make no arguments to the contrary); and he suffered an adverse employment action when Defendants failed to extend his probationary employment agreement in October 2020 and notified him that his employment would terminate as of November 4, 2020.  The sufficiency of his Complaint thus turns on whether Plaintiff has pleaded plausibly a basis for an inference that his employment was terminated because of his age.

The Court concludes that Plaintiff has alleged, albeit rather conclusorily, sufficient facts to raise an inference of age-based discrimination by Defendants.  First, the

sequence of events leading to Plaintiff's termination raises an inference of age discrimination. Plaintiff alleges a continuing pattern of age-based discrimination throughout his employment with the DOE—including shifts from favorable evaluations to unfavorable reviews and treatment, and more favorable treatment of younger, less experienced employees.  He was often replaced with multiple younger employees after he departed from a school.  In the period leading up to his 2020 termination, Plaintiff alleges that the defendant principal and a younger assistant principal made an abrupt shift from favorable to unfavorable ratings and ceased providing feedback, instructing him, instead, to observe much younger and less experienced fellow teachers.  He alleges that he and other, named, older teachers were given less-desirable assignments at the school from which he was terminated.  These circumstances are suggestive of age-related bias and are sufficient at this pleading stage, when Plaintiff's allegations are read in the light most favorable to him, to support the requisite inference of causal connection between his age and the termination.

   The alleged disparate treatment of younger versus older employees at the Horan School is also suggestive of a discriminatory motivation for the termination.  Plaintiff asserts that age discrimination was "commonplace" at the school, and provides several illustrative examples. (Add. Compl. ¶ 37.)  Specifically, he identifies at least three special education teachers under 40 who received more favorable treatment than himself; and at least three other older teachers who were subjected to the types of mistreatment he allegedly experienced.  At the motion to dismiss stage, and especially when considering Plaintiff's pro se status, such allegations are sufficient, if barely so, to raise an inference of discrimination.  See Trachtenberg v. Dep't of Educ. of City of New York, 937 F. Supp. 2d 460, 471 (S.D.N.Y. 2013) (speech teacher's ADEA claim sufficiently raised an inference of disparate treatment where plaintiff had identified "at least one speech teacher under 40 who was allegedly treated differently;" several "other teachers under 40

who were allegedly treated differently;" and "five teachers over 40 who were allegedly subjected to . . . similar mistreatment as [plaintiff].")

Defendants argue that Plaintiff cannot make out a discrimination claim because the DOE had a legitimate, non-discriminatory reason for terminating him (i.e., his poor performance reviews).  This argument is unavailing, because an employer's reasons for termination should not be considered at the pleading stage, particularly where, as here, the cited legitimate grounds are themselves alleged to be the product of discriminatory actions.  See id. at 472 ("In any event, whether the [DOE] had a legitimate, non-discriminatory reason for its [employment] actions is an issue for summary judgment or trial.").  Accordingly, the Court concludes that Plaintiff has plausibly pled his claim that the discontinuance of his employment was the product of age discrimination, and Defendants' Motion to Dismiss is denied as to Plaintiff's claims under the ADEA, NYSHRL and NYCHRL concerning the 2020 discontinuance of his probationary status and termination of his employment.

## Conclusion

For the reasons explained above, the Motion is granted in part and denied in part. Plaintiff's ADEA claims against defendants Louissaint and Phillips are dismissed for lack of individual liability.  The Motion is denied as to Plaintiff's ADEA, NYSHRL, and NYCHRL claims against the DOE arising from the allegedly age-related discontinuance of his probationary status and termination of his employment; and is also denied as to Plaintiff's NYSHRL and NYCHRL age discrimination claims against the individual defendants regarding the discontinuance and termination.  The Motion is granted in all other respects.  Plaintiff is granted permission to amend his Complaint to add a section 1983 age-based equal protection claim.  The amended complaint must be filed within 30 days from the date of this Memorandum Order.  The

amended complaint must plead plausibly facts and theories supporting an equal protection claim and must include all other facts that Plaintiff wants the Court to consider in connection with his discriminatory employment discontinuance/termination claim, because the amended complaint will replace the original Complaint in its entirety.

This Memorandum Order resolves docket entry no. 30.  The Clerk's Office is respectfully directed to mail a copy of this Memorandum Order to Plaintiff with a copy of an amended complaint form.  This case will be referred to a Magistrate Judge for general pretrial management.

SO ORDERED.

Dated: March 30, 2023
        New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

**Copy to be mailed to:**

Charles Mackenzie
356 E 87th St, Apt 3B
New York, NY 10128